106 F.3d 410
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria V. LOPEZ, aka Maria R. Huerta, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Eusebio HUERTA, Defendant-Appellant.
 No. 95-30230, 95-30236.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 11, 1996.*
Decided Jan. 14, 1997.
 
 1
 Before: BROWNING, D.W. NELSON, and FERNANDEZ, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Maria Lopez and Jose Huerta appeal their convictions and sentences. After a joint jury trial, both were convicted of conspiracy to distribute cocaine under 21 U.S.C. §§ 841(a)(1), 846; Lopez was also convicted of money laundering under 18 U.S.C. § 1957. On appeal, they raise a number of issues which we decide in this memorandum disposition.[1] We affirm in part and reverse in part.
 
 
 4
 (1) Lopez claims that the wiretaps were unnecessary and without probable cause. Huerta asserts that they were unnecessary, and that there were material omissions in the affidavit. We disagree with all of those assertions.
 
 
 5
 The affidavit showed probable cause regarding Lopez. Under 18 U.S.C. § 2518, the government must support its application for a wiretap authorization with an affidavit showing probable cause. See United States v. Tham, 960 F.2d 1391, 1395 (9th Cir.1991); United States v. Brown, 761 F.2d 1272, 1275 (9th Cir.1985). Following Illinois v. Gates, 462 U.S. 213, 230, 238, 103 S.Ct. 2317, 2328, 2332, 76 L.Ed.2d 527 (1983), we apply a "practical common sense" standard to probable cause and examine the totality of the circumstances. Tham, 960 F.2d at 1395. Our review of the record makes it clear that the affidavit presented to Judge Trott more than satisfied the probable cause standard; any other view would be totally lacking in common sense.
 
 
 6
 In addition to requiring a showing of probable cause, 18 U.S.C. § 2518(3)(c) requires the government to show necessity for the wiretap. See Brown, 761 F.2d at 1275. Nonetheless, this statute does not require exhaustion of " 'every conceivable alternative before obtaining a wiretap.' " United States v. Homick, 964 F.2d 899, 903 (9th Cir.1992) (quoting United States v. Brone, 792 F.2d 1504, 1506 (9th Cir.1986)); see also United States v. Ippolito, 774 F.2d 1482, 1486 (9th Cir.1985). Like the probable cause question, we review the issue of necessity with "a practical and common sense approach." Id.; United States v. Echavarria-Olarte, 904 F.2d 1391, 1396 (9th Cir.1990). Reviewed from this common-sense standpoint, it is apparent that the district judge's refusal to grant the motion to suppress was not an abuse of discretion. The government had failed, despite substantial efforts, to learn the identity of the source of the cocaine and marijuana and to learn the role and identity of all of the conspirators. The government had used many investigative methods, such as surveillance, informants, pen registers, and search warrants, and had determined that other methods, such as grand jury investigations or cohort interviews, would be futile. Additionally, members of the Huerta family had used informants against the government and had made death threats against federal officers. In light of those death threats and the failure of many investigative techniques, Judge Trott's and Judge Lodge's determinations that the government had shown necessity were well within their discretion. See Homick, 964 F.2d at 903; Echavarria-Olarte, 904 F.2d at 1396.
 
 
 7
 Finally, we reject Huerta's assertion that there were intentional or reckless material omissions of fact in the affidavit. Of course, omissions may lead to suppression if the insertion of the omitted matter would undermine the probable cause showing otherwise contained in the affidavit. See Franks v. Delaware, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); Ippolito, 774 F.2d at 1484-85; Tham, 960 F.2d at 1395; Homick, 964 F.2d at 904-05. Here, however, the district court's factual finding that the affiant's omissions were negligent was not clearly erroneous. See Ippolito, 774 F.2d at 1484. Moreover, the district court properly concluded that the affidavit still showed probable cause when read as if the omitted information were included. See id. at 1485-86. We find no error.
 
 
 8
 (2) The evidence sufficiently supports Lopez's conviction for money laundering under 18 U.S.C. § 1957. Lopez asserts that the government did not show that she acted knowingly. However, it is well-settled that knowledge may be, and often must be, inferred from circumstantial evidence. See, e.g., United States v. Thompson, 82 F.3d 849, 854 (9th Cir.1996). In this case, there was a great deal of circumstantial evidence showing that Lopez knowingly used drug money, which she laundered into cashier's checks, to purchase the house. For example, she and her husband were involved in drug trafficking and had no sufficient source of legitimate income, and she structured the transaction to avoid currency reporting requirements. Clearly, a rational trier of fact could have concluded that Lopez purchased the house with money which she knew came from illegal drug transactions. See Thompson, 82 F.3d at 854.
 
 
 9
 (3) Next, we reject both Lopez's and Huerta's argument that the district court erred when it refused to reduce their Sentencing Guidelines offense levels for acceptance of responsibility under USSG § 3E1.1.[2] Under USSG § 3E1.1, a defendant is entitled to a reduction only if he truly accepts responsibility for his conduct. While a district court may not punish a defendant for exercising his right to a trial, United States v. McKinney, 15 F.3d 849, 852 (9th Cir.1994), the application notes explain that this adjustment is generally unavailable to a defendant who puts the government to its burden of proof at trial and only admits guilt and expresses remorse after he is convicted. USSG § 3E1.1, comment. (n. 2); see also United States v. Restrepo, 930 F.2d 705, 710 (9th Cir.1991). That is exactly what happened in this case. More than that, neither truly accepted responsibility; each tried to fob off responsibility on others.
 
 
 10
 (4) Finally, we hold that Lopez was not a minimal participant in the conspiracy. She asserts that she was a minimal participant, as defined in USSG § 3B1.2(b), because she was only a courier. Nothing could be further from the truth. In the first place, the mere fact that a defendant acted as a courier " 'does not mean his role was minimal or minor.' " United States v. Davis, 36 F.3d 1424, 1436 (9th Cir.1994) (quoting Ajala v. United States Parole Comm'n, 997 F.2d 651, 656 (9th Cir.1993)), cert. denied sub nom. Williams v. United States, --- U.S. ----, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995); see also United States v. Lui, 941 F.2d 844, 848-49 (9th Cir.1991); United States v. Zweber, 913 F.2d 705, 710 (9th Cir.1990). "Culpability, not courier status, is the key." Zweber, 913 F.2d at 710. Moreover, in this case Lopez was much more than a simple courier.
 
 
 11
 The district court did reduce Lopez's offense level two points for minor participation under section 3B1.2, because it found that her participation was much less than that of the others, but that it was not minimal. She was not entitled to more. Thus, the district court's decision was not clearly erroneous. Davis, 36 F.3d at 1436.
 
 
 12
 AFFIRMED as to Huerta, and AFFIRMED as to Lopez on all issues addressed in this disposition, but REVERSED as to Lopez on the issue addressed in our opinion.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We address Lopez's claim regarding grouping of offenses in an opinion filed this date
 
 
 [2]
 We refer to the Guidelines effective November 1, 1994 unless otherwise stated