OPINION
HAWKINS, Circuit Judge:
The government appeals the suppression of evidence found inside closed containers — themselves inside a motor vehicle stopped for a traffic violation — after the driver was handcuffed and securely placed in the rear of the arresting officer’s patrol car. We affirm.

FACTS

Officer Scott Bonney had pulled over to the side of the road to finish writing a police report, when he saw Neal Maddox’s (“Maddox”) Chevy truck enter the intersection. Maddox stopped abruptly in the intersection, then immediately proceeded in reverse. As he was moving in reverse towards the stop sign, Maddox nearly collided with a small blue car going westbound in the intersection. He made a three-point turn, blocking traffic, turned around, and accelerated. Maddox slowed once the officer activated his overhead lights, and stopped at the side of the road.
When Officer Bonney exited his patrol car, Maddox exited his vehicle and began yelling at the officer. Officer Bonney instructed Maddox to sit in the driver’s seat and remain still, approached the vehicle, and told Maddox he had stopped him for driving recklessly. Maddox identified himself, but was unable to produce a driver’s license. When asked whether the vehicle belonged to him, Maddox admitted ownership, noting his friend gave him the truck a few weeks before. He added he had yet to register the truck, and had no bill of sale. Officer Bonney noticed the vehicle’s tags were expired, and the temporary sticker in the rear window was not only a photocopy, but also valid for longer than was normal for a temporary sticker (31 rather than 30 days). A computer check revealed that Maddox’s license had been suspended. When Maddox ignored the officer’s request to step outside the vehicle, the officer took away Maddox’s key chain and cell phone, tossing them on the front seat of Maddox’s vehicle. Officer Bonney placed Maddox under arrest, handcuffed him, and escorted him to the patrol car. He then searched Maddox’s person and found $358 in cash inside Maddox’s pants pockets, putting Maddox in the back of the patrol car after the search. It is undisputed that, at this point, Maddox posed no threat to officer safety and there was no danger of evidence destruction.
Officer Bonney then returned to Maddox’s vehicle, reached inside, and retrieved the key chain and cell phone. Hanging on the key chain was a metal vial with a screw top. Removing the top and the vial’s contents, the officer discovered a substance he believed to be methamphetamine. Entering the interior of vehicle, the officer found a closed computer case which he opened, and discovered a handgun and still more of the substance he had found in the key chain vial.
Following a hearing, the district court determined that neither probable cause, exigent circumstance, nor the incidents of Maddox’s arrest or impoundment of his vehicle justified a warrantless search of the interior of Maddox’s vehicle, and ordered suppression of the items found there. This interlocutory appeal followed.[1]

*1048
STANDARD OF REVIEW

A district court’s grant or denial of a motion to suppress is reviewed de novo. United States v. Orman, 486 F.3d 1170, 1173 (9th Cir.2007); United States v. Bynum, 362 F.3d 574, 578 (9th Cir.2004); United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir.1992).

DISCUSSION

The Key Chain

The Government argues the search of Maddox’s key chain was proper as incident to lawful arrest.
A search incident to lawful arrest is one of the “few specifically established and well-delineated exceptions” to the warrant requirement of the Fourth Amendment, see Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and is conducted for the twin purposes of finding weapons the arrestee might use, or evidence the arrestee might conceal or destroy. Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The determination of the validity of a search incident to arrest in this circuit is a two-fold inquiry: (1) was the searched item “within the arrestee’s immediate control when he was arrested”; (2) did “events occurring after the arrest but before the search ma[k]e the search unreasonable”? United States v. Turner, 926 F.2d 883, 887 (9th Cir.1991).[2]
Contrary to the dissent’s opening description, this was not a search of Maddox’s person incident to arrest. Maddox’s person was handcuffed in the back of the squad car, incapable of either destroying evidence or presenting any threat to the arresting officer. While the key chain was within Maddox’s immediate control while he was arrested, subsequent events' — ■ namely Officer Bonney’s handcuffing of Maddox and placing Maddox in the back of the patrol car-rendered the search unreasonable. In Turner, we found valid the search of baggies found after the defendant was handcuffed and taken into the next room because of a legitimate concern for the officers’ safety: “they had already discovered a concealed weapon beneath the bedding.” Id. at 888; accord United States v. Hudson, 100 F.3d 1409, 1420 (9th Cir.1996) (search of bedroom valid search incident to arrest even after defendant had been arrested and removed from the room, *1049 where “[w]hen Hudson was called out of his bedroom and arrested, one of the arresting officers noticed a rifle case near his feet”). No such weapon or threat was found here, and Maddox’s demeanor, as the dissent argues, see Dissenting Op., at 11445 n. 1, did not provide such legitimate concern for Officer Bonney’s safety, as after initially yelling, Maddox subsequently cooperated with the officer and the arrest. Mere temporal or spatial proximity of the search to the arrest does not justify a search; some threat or exigency must be present to justify the delay. See United States v. Chadwick, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), overruled on other grounds by California v. Acevedo, 500 U.S. 565, 571, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (“warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the search is remote in time or place from the arrest, or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and > there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.”) (internal quotations and citations omitted). With Maddox handcuffed in the backseat of the patrol car, no possibility of Maddox concealing or destroying the key chain and the items contained therein, and no sighting of weapons or other such threats, Officer Bonney’s search of Maddox’s key chain was not a valid search incident to arrest.[3]

The Laptop Bag

The Government contends the officer’s seizure of the laptop bag was the result of a valid inventory search.[4] Vehicular inventory searches must be conducted “in accordance with the standard procedures of the Washington State Patrol” in order for procured evidence to be admitted in federal court. United States v. Wanless, 882 F.2d 1459, 1463 (9th Cir.1989). Once a vehicle is impounded, police may conduct an inventory search. Id. Police may impound a vehicle in Washington state:
*1050 if the officer has probable cause to believe that it was stolen or used in the commission of a felony; ... as part of the police ‘community caretaking function’ ... [provided] neither the defendant nor his spouse or friends are available to move the vehicle; and ... if the driver has committed one of the traffic offenses for which the legislature has specifically authorized impoundment.[5]
State v. Williams, 102 Wash.2d 733, 689 P.2d 1065, 1071-72 (1984). With the verification of the vehicle identification number and plates, and Maddox’s own assertion of ownership, any suspicion the vehicle was stolen was but a “mere suspicion.” See State v. Houser, 95 Wash.2d 143, 622 P.2d 1218, 1222-23 (1980)[6]. Moreover, the vehicle here was impounded for reasons other than to carry out the community caretaking functions of the police: it was not abandoned, impeding traffic, or threatening public safety or convenience. See id. at 1224. Finally, because Maddox offered to have his friend move the vehicle, the officer did not sufficiently consider alternatives before impounding Maddox’s truck. The officer’s impoundment of Maddox’s vehide violated Washington Law, and, therefore, did not qualify as a valid inventory search in accordance with the Fourth Amendment.
AFFIRMED.

. We deny the Government's motion to file a supplemental record of an alleged misstatement made by a defense witness at the suppression hearing; this evidence was never presented to the district court, and was not a part of the district court record. We grant Maddox's motion to strike the portion of the Government's reply brief referring to such testimony.

. The dissent relies on United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), convinced Officer Bonney conducted a valid search incident to arrest. Dissenting Op., at 1052-53. Robinson, however, is easily distinguishable from the case before us; the search of Maddox’s key chain was not a valid search incident to arrest as the key chain was not on Maddox’s person at the time of the search. After pulling over Robinson’s vehicle, the officer was "face-to-face” with Robinson when he conducted a patdown of the defendant, during which he "fell an object in the left breast pocket of the heavy coat respondent was wearing,” reached into Robinson’s pocket and pulled out the object (a crumpled cigarette package), and then opened the package, finding 14 gelatin capsules of heroin. Id. at 224, 94 S.Ct. 467. The officer then "continued his search of [Robinson] to completion, feeling around his waist and trouser legs, and examining the remaining pockets.” Id. Here, Officer Bonney took the keys, and placed them on the seat of Maddox's car; he did not open the key chain during a patdown search of Maddox, but after Maddox was secure in the patrol car and when the keys were no longer on his person. The Court’s admonition in Robinson that "the authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect,” id. at 253, 94 S.Ct. 467, cannot possibly have meant to encompass a situation such as Maddox's, where he was handcuffed and locked securely in the back of a patrol car.

. Maddox did not have a diminished privacy interest in his key chain container merely because he "chose to attach the searched container to his keys.” See Dissenting Op., at 1054 n. 4. The Supreme Court has "rejected the proposition that 'the nature of a container may dimmish the constitutional protection to which it otherwise would be entitled.’ ” United States v. Monclavo-Cruz, 662 F.2d 1285, 1287 (9th Cir.1981) (citing Robbins v. California, 453 U.S. 420, 424-25, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981)) (plurality). “[S]uch a distinction 'has no basis in the language or meaning of the Fourth Amendment’ because that 'Amendment protects people’ and their effects, and it protects those effects whether they are ‘personal’ or ‘impersonal.’ ” Id. In recognizing an individual’s privacy interest in a purse, we held "no one can sensibly be asked to distinguish the relative ‘privacy interests' in a closed suitcase, briefcase, portfolio, duffle bag or box.” Id. While the keys may very well be considered "what amounts to a tool,” see Dissenting Op., at 1054 n. 4, and while “any person wishing to drive his truck, move his truck, lock or unlock his truck [may be] required to use a set of keys,” see id., such use of the keys would not require a person to open the container attached to those keys. An individual therefore has a privacy interest in such a container, which could contain a wide range of medications or other personal items.

. The Government does not contest that without a valid seizure of the key chain, the officer lacked probable cause to search the rest of the vehicle, and therefore did not have probable cause to seize the laptop bag. See United States v. Barajas-Avalos, 377 F.3d 1040, 1054 (9th Cir.2004) (citing United States v. Wanless, 882 F.2d 1459, 1465 (9th Cir.1989)); United States v. DiCesare, 765 F.2d 890, 899, amended by 111 F.2d 543 (9th Cir.1985).

. Here, neither the offense of reckless driving, nor the offense of driving while license suspended (3rd degree), specifically authorize impoundment. See Rev.Code Wash. §§ 46.61.500; 46.20.342.

. The court in Houser found the detective "harbored a mere suspicion that the car was stolen, and that it was this suspicion which caused the officer to impound the car." Houser, 622 P.2d at 1224. The officer testified that he was not sure the vehicle was stolen, made no further inquiry into the defendant’s right to possession of the car, did not inquire as to the false identity used by the defendant, did not ask why the defendant was in the area, and did not inquire why the defendant was using a car registered to another individual. Id. He also did not run a check of the VIN to determine if the car was stolen. Id. Because "a mere suspicion that a vehicle is stolen does not rise to the level of probable cause for the purpose of justifying an intrusion of Fourth Amendment rights,” the court found that "the State ha[d] not sustained its burden of showing the impoundment was based on probable cause that the car was stolen.” Id.
Here, not only did Officer Bonney run the VIN and find the car was not stolen, but he also asked Maddox whether the truck belonged to him. Maddox responded that he owned the truck but it was given to him by a friend, and he did not have time to register it. With the verification of the VIN and plates, and Maddox’s own assertion, Officer Bonney had even less reason to believe the vehicle was stolen than the officer in Houser; any suspicion the vehicle was stolen, therefore, was only a “mere suspicion” and did not rise to the level of reasonable cause required under Washington state law. See Houser, 622 P.2d at 1223.