No. 115,235

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JONATHAN R. WISSING,
*Appellee*.

SYLLABUS BY THE COURT

1.

The State bears the burden to prove the lawfulness of a search or seizure challenged in a motion to suppress evidence.

2.

When reviewing a district court's decision on a motion to suppress evidence, we use a bifurcated standard, reviewing the district court's factual findings for substantial competent evidence and the ultimate legal conclusion drawn from those facts de novo.

3.

Once an officer is authorized to arrest a person, it is lawful for the officer to search that person as an incident of his or her arrest to protect the officer's safety.

4.

The search-incident-to-arrest exception to the search warrant requirement permits a police officer who makes a lawful arrest to conduct a warrantless search not only of the arrestee but also of the area within the arrestee's immediate control—the area from within which he or she might gain possession of a weapon or destructible evidence.

1

5.

A search incident to arrest must be substantially contemporaneous with the arrest.

6.

Warrantless searches incident to arrest are conducted for the twin purposes of finding weapons the arrestee might use or evidence the arrestee might conceal or destroy.

7.

Under the search-incident-to-arrest exception, the State need not prove that the officer's safety may have been in jeopardy or that his or her safety was in jeopardy before the officer has authority to seize and search personal property that is within the arrestee's immediate control at the time of the arrest.

8.

The legality of a search incident to arrest must be judged on the basis of categorical rules, thus the authority to search a person incident to a lawful custodial arrest, although based upon the need to disarm and to discover evidence, does not depend on an evaluation of the threat to officer safety or the threat of evidence loss in a particular case.

9.

Under the categorical approach, once police make a lawful arrest, a full search of the person and of his or her personal effects within the arrestee's immediate control requires no additional justification and constitutes a reasonable search incident to arrest under the Fourth Amendment to the United States Constitution.

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed July 29, 2016. Reversed and remanded.

*Andrew R. Davidson*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Sam S. Kepfield*, of Hutchinson, for appellee.

Before MALONE, C.J., GREEN and GARDNER, JJ.

GARDNER, J.: This interlocutory appeal by the State challenges the suppression of evidence an officer found in Jonathan R. Wissing's wallet soon after his arrest. Wissing, while handcuffed, had removed his wallet from his pocket and had placed it on a dresser before the officer retrieved it and searched it. We find, based on a categorical approach, that the officer had the authority to search the wallet incident to Wissing's arrest. Accordingly, we reverse and remand.

FACTUAL BACKGROUND

The underlying facts in this case are simple and undisputed. On August 4, 2015, Patrol Sergeant Jake Graber saw a man riding a moped and recognized him from previous contacts as Jonathan Wissing. Believing that active warrants for Wissing were outstanding, the officer stopped him. The officer testified that he saw Wissing look inside a wallet and put it in his pocket. The officer placed Wissing under arrest for the outstanding warrants and handcuffed Wissing's hands in front of his body.

Wissing asked the officer if he could go inside his nearby house to tell his mother he was going to jail. The officer agreed and walked into the house with Wissing. While Wissing was talking with his mother, the officer saw Wissing remove a wallet from his back pocket and place it on a dresser. The officer then retrieved Wissing's wallet and

3

asked Wissing if his ID was in it. When Wissing responded that it was, the officer opened the wallet and found a small plastic bag containing a white crystalline substance that the officer believed to be methamphetamine. The officer seized the plastic bag.

After leaving the house, and in accordance with department policy, the officer conducted a pat-down search before placing Wissing in the patrol car. The officer took the wallet and the ID card to the jail. The State charged Wissing with possession of methamphetamine and possession of drug paraphernalia with the intent to introduce a controlled substance into the human body.

Wissing moved to suppress the evidence found in his wallet. At the hearing on the motion, the State established facts relevant to probable cause to search, search incident to arrest, and inevitable discovery. Ultimately, the district court granted Wissing's motion to suppress, and the State timely filed this interlocutory appeal.

I.   DID THE DISTRICT COURT ERR BY GRANTING WISSING'S MOTION TO SUPPRESS EVIDENCE?

On appeal, the State argues that the officer's search and seizure of the wallet was reasonable as a search incident to arrest because Wissing had his wallet on his person when he was arrested and the wallet remained within Wissing's reach after he placed it on the dresser soon after his arrest. The State does not rely on any other exceptions to the warrant requirement so we do not address them. Wissing counters that the search was not incident to arrest because the officer neither feared for his safety nor sought to preserve evidence of the crime for which Wissing was arrested.

A.    *Standard of review*

When reviewing a district court's decision on a motion to suppress evidence, we use a bifurcated standard, reviewing the district court's factual findings for substantial competent evidence and the ultimate legal conclusion drawn from those facts de novo. The State bears the burden to prove the lawfulness of a search or seizure challenged in a motion to suppress evidence. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

B.    *Fourth Amendment principles control*

Kansas currently has no statute governing the scope of lawful searches incident to arrest and had none at the time of Wissing's arrest. Although Kansas has had such a statute at times, we find no need to recap that history for purposes of this case. Instead, we refer those interested in the history to *State v. James*, 301 Kan. 898, 904-08, 349 P.3d 457 (2015), which thoroughly summarizes it. Because no statutory law governed the scope of this search, the resolution of this appeal turns on Fourth Amendment principles.

The Fourth Amendment to the United States Constitution, as applicable to the States under the Fourteenth Amendment "protects everyone's right to be secure in his or her person and not subject to unreasonable searches by the government." *James*, 301 Kan. at 908. Any warrantless search is generally unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. Those exceptions include:  consent, search incident to lawful arrest, stop and frisk, probable cause to search accompanied by exigent circumstances, emergency aid, inventory searches, plain view, and administrative searches of closely regulated businesses. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). In this case, we examine only the search incident to arrest exception.

5

C.      *Search-incident-to-arrest doctrine, generally*

A search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment. *Riley v. California*, 573 U.S. __, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014).

> "The search-incident-to-arrest doctrine has an ancient pedigree that predates the Nation's founding, and no historical evidence suggests that the Fourth Amendment altered the permissible bounds of arrestee searches. The mere 'fact of the lawful arrest' justifies 'a full search of the person.' *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d. 427." *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2174, ___L. Ed. 2d ___ (2016).

D.      *Lawfulness of arrest*

The parties agree that Wissing's arrest was lawful based on his outstanding warrants. As the United States Supreme Court has recently found,

> "And once Officer Fackrell discovered the warrant, he had an obligation to arrest Strieff. 'A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions.' *United States v. Leon,* 468 U.S. 897, 920, n.21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) (internal quotation marks omitted). Officer Fackrell's arrest of Strieff thus was a ministerial act that was independently compelled by the pre-existing warrant. And once Officer Fackrell was authorized to arrest Strieff, it was undisputedly lawful to search Strieff as an incident of his arrest to protect Officer Fackrell's safety. See *Arizona v. Gant*, 556 U.S. 332, 339, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) (explaining the permissible scope of searches incident to arrest)." *Utah v. Strieff*, 579 U.S. ___, 136 S. Ct. 2056, 2062-63, ___L. Ed. 2d ___, (2016).

Because the officer was authorized to arrest Wissing, he was also authorized to search Wissing as an incident of his arrest for his own protection.

E.     *Search substantially contemporaneous with arrest*

A search incident to arrest must be "roughly contemporaneous" with the arrest. *State v. Beltran*, 48 Kan. App. 2d 857, 887, 300 P.3d 92 (2013), citing *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). However, the requirement that the arrest and search be contemporaneous is not strictly temporal. *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004). "[T]he relevant focus is 'not strictly on the timing of the search but its relationship to (and reasonableness in light of) the circumstances of the arrest.'" *United States v. Caseres*, 533 F.3d 1064, 1073 (9th Cir. 2008) (quoting *Smith*, 389 F.3d at 951). Accordingly:  "The determination of the validity of a search incident to arrest in this circuit is a twofold inquiry:  (1) was the searched item 'within the arrestee's immediate control when he was arrested'; (2) did 'events occurring after the arrest but before the search ma[k]e the search unreasonable'? *United States v. Turner*, 926 F.2d 883, 887 (9th Cir. 1991)." *United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010).

The parties appear to agree that the search of Wissing's wallet was substantially contemporaneous with Wissing's arrest. Although the record does not reveal how many minutes separated the search from the arrest, the sequence of events demonstrates that the search occurred soon after the arrest in an unbroken chain. We thus find the search was substantially contemporaneous with Wissing's arrest.

F.     *Area within the arrestee's immediate control*

The "search-incident-to-arrest" exception permits a police officer who makes a lawful arrest to conduct a warrantless search not only of the arrestee but also of the area

within the arrestee's immediate control. *Davis v. United States*, 564 U.S. 229, 232, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). See *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d. 685 (1969).

> "A similar analysis underlies the 'search incident to arrest' principle, and marks its proper extent. When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. . . . And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel,* 395 U.S. at 762-63.

"[I]n determining whether or not an area is within the arrestee's '"immediate control,"' . . . we consider not only the arrestee's location, but also the nature of any restraints that have been imposed upon the person . . . . [Citations omitted.]" *United States v. Blue*, 78 F.3d 56, 60 (2d Cir. 1996). The court recognizes that custodial arrests are often dangerous and that, in the heat of an arrest, "police must act decisively and cannot be expected to make punctilious judgments regarding what is within and what is just beyond the arrestee's grasp." *United States v. Lyons*, 706 F.2d 321, 330 (D.C. Cir. 1983). Moreover, as some courts have concluded, "it is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person or within lunge reach . . . ." *United States v. Shakir*, 616 F.3d 315, 321 (3d Cir. 2010) (quoting *United States v. Sanders,* 994 F.2d 200, 209 [5th Cir. 1993]).

In its ruling, the district court held that Wissing placed the wallet "out of his control in a safe place" as opposed to "throw[ing] it out of a car window," apparently

finding some middle ground between the wallet being within Wissing's control and it being abandoned. Abandoned property is not subject to Fourth Amendment protections because it is not the fruit of a seizure. See *California v. Hodari D.*, 499 U.S. 621, 628-29, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991).

We disagree with the district court's conclusion. Here, at the time it was seized, the wallet was within Wissing's immediate control. Although Wissing was handcuffed at the time, that restraint did not preclude him from placing the wallet on the dresser, so it would not have precluded him from retrieving it from that same location, from which he had not moved. Wissing thus had access to the wallet despite his restraints. Because his wallet, at the time it was searched, was in an area accessible to Wissing, who had just been lawfully arrested, its search was permissible under governing law.

In *Riley*, the Supreme Court emphasized that the search incident to arrest exception is limited to "personal property . . . immediately associated with the person of the arrestee." 134 S. Ct. at 2484. Wissing's wallet meets that criteria. The wallet was within Wissing's immediate control both when he was arrested and when it was searched, and the events occurring after the arrest, but before the search, did not make the search unreasonable.

Wissing argues without citation to authority that his intervening act of removing the wallet from his person after arrest converted the wallet to a nonsearchable object. We find no support for that proposition. Wissing elsewhere cites to *State v. Reed*, No. 113,576, 2015 WL 9287062 (Kan. App. 2015) (unpublished opinion), a case that is not binding precedent. Supreme Court Rule 7.04(g)(2) (2015 Kan. Ct. R. Annot. 64). In *Reed*, an officer stopped the defendant for a traffic violation and asked for his identification. The defendant gave his driver's license to the officer then placed his wallet on the roof of his car as he was exiting. The defendant and the officer walked to the back of his car, where the officer arrested and handcuffed him. After placing the defendant in

9

the patrol car, the officer returned to the defendant's car, picked up the wallet, searched it, and found a small bag containing what the officer believed was methamphetamine. *Reed*, 2015 WL 9287062, at \*1. This court held that the evidence was properly suppressed because at the time of the search, there was no possibility that the defendant could reach his wallet. Those facts are distinguishable from here, since Wissing's wallet was on his person at the time of his arrest and remained within his reach at the time of the search. *Reed* recognized the distinction, stating: "If Reed's wallet had been in his pocket or even in his hand when he was arrested, the search in this case clearly would have been constitutional as a search incident to arrest." 2015 WL 9287062, at \*4.

## II.    CATEGORICAL APPROACH, NOT CASE-BY-CASE, IS USED.

Wissing's primary argument is that the search was illegal because neither justification for a search incident to arrest was shown—the safety of the officer nor the preservation of evidence of the crime of arrest. He contends that the wallet posed no actual or reasonable threat to officer safety that could have justified its seizure. The district court agreed, finding the search incident to arrest exception "is only for certain purposes. It's for the purpose of protecting an officer and for safeguarding evidence of the offense of arrest." The State does not argue that Wissing's wallet may have contained evidence of the offense of arrest; thus, we confine our analysis to the safety purpose served by the search incident to arrest exception.

Warrantless searches incident to arrest are conducted for the twin purposes of finding weapons the arrestee might use or evidence the arrestee might conceal or destroy. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); Chimel, 395 U.S. at 762-63. Here, the State did not introduce evidence at the suppression hearing that the wallet could have contained a razor blade, a small knife, other some other object that Wissing could have used to jeopardize the officer's safety. Nor did the State show

10

that the officer subjectively believed that the wallet he searched could have contained items that posed a threat to his safety.

But the State need not prove that the officer's safety was actually in jeopardy or that the officer believed his or her safety was in jeopardy before the officer has authority to seize personal property that is within the arrestee's immediate control. See *Gant*, 556 U.S. at 341-44 (finding that the area within which the arrestee might gain possession of a weapon or destructible evidence defines the boundaries of the exception); *United States v. Robinson*, 414 U.S. 218, 251, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973) ("The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.").

Instead, as we address more thoroughly below, the "legality of a search incident to arrest must be judged on the basis of categorical rules." *Birchfield*, 136 S. Ct. at 2179. Although other exceptions, such as the exigent circumstances exception, involve an evaluation of the particular facts of each case, the search-incident-to-arrest exception authority is strictly categorical; thus "[i]t does not depend on an evaluation of the threat to officer safety or the threat of evidence loss in a particular case." *Birchfield*, 136 S. Ct. at 2184. Accordingly, whether or not Wissing's wallet contained something posing a threat to the officer's safety plays no part in our analysis, which is not based on a case-by-case approach.

In *Robinson*, the Supreme Court squarely rejected the same argument Wissing voices here, that each case must show one of the reasons supporting the authority for a search incident to arrest, stating:

11

"[O]ur more fundamental disagreement with the Court of Appeals arises from its suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest. We do not think the long line of authorities of this Court dating back to *Weeks*, or what we can glean from the history of practice in this country and in England, requires such a case-by-case adjudication. A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. . . . [A] search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Robinson*, 414 U.S. at 235.

Under the categorical approach, once police make a lawful arrest, a full search of the person and of his or her personal effects within his or her immediate control "requires no additional justification" and constitutes a reasonable search incident to the arrest under the Fourth Amendment. *Robinson,* 414 U.S. at 235. Therefore, it is irrelevant whether Wissing's wallet actually contained any item that could have posed a realistic threat to the officer's safety, or whether the officer subjectively thought it may have done so. See generally *State v. Cotton*, No. 111,610, 2015 WL 4716284 (Kan. App. 2015) (unpublished opinion) (search is constitutionally permissible even though the officer did not necessarily think of it as a search incident to arrest where the circumstances, viewed objectively, justify that action). Similarly, whether Wissing was reaching for his wallet instead of trying to separate himself from it does not control our analysis. An officer need not presume that an arrestee who appears to be separating himself from an object will not momentarily change his mind and grab it again.

12

The Supreme Court has often emphasized and recently reaffirmed this categorical approach in deciding searches incident to arrest cases, as it recently summarized in *Birchfield*, 136 S. Ct. at 2175-76:

"We attempted to clarify the law regarding searches incident to arrest in *Chimel v. California*, 395 U.S. 752, 754, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), a case in which officers had searched the arrestee's entire three-bedroom house. *Chimel* endorsed a general rule that arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, could search both 'the person arrested' and 'the area "within his immediate control."' Id., at 763, 89 S. Ct. 2034. . . .

"Four years later, in *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973), we elaborated on *Chimel*'s meaning. We noted that the search-incident-to-arrest rule actually comprises 'two distinct propositions': 'The first is that a search may be made of the *person* of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee.' 414 U.S., at 224, 94 S. Ct. 467. After a thorough review of the relevant common law history, we repudiated 'case-by-case adjudication' of the question whether an arresting officer had the authority to carry out a search of the arrestee's person. *Id.*, at 235, 94 S. Ct. 467. The permissibility of such searches, we held, does not depend on whether a search of a *particular* arrestee is likely to protect officer safety or evidence: 'The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.' *Ibid.* Instead, the mere 'fact of the lawful arrest' justifies 'a full search of the person.' *Ibid.* In *Robinson* itself, that meant that police had acted permissibly in searching inside a package of cigarettes found on the man they arrested. *Id.,* at 236, 94 S. Ct. 467.

"Our decision two Terms ago in *Riley v. California*, 573 U.S. __, 134 S. Ct. 2473, 189 L. Ed. 2d. 430 (2014), reaffirmed '*Robinson*'s categorical rule' and explained how the rule should be applied in situations that could not have been envisioned when the Fourth Amendment was adopted. *Id.*, at __, 134 S. Ct., at 2484. *Riley* concerned a search

of data contained in the memory of a modern cell phone. 'Absent more precise guidance from the founding era,' the Court wrote, 'we generally determine whether to exempt a given type of search from the warrant requirement "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."' *Ibid."*

*Birchfield* itself applied and reaffirmed the categorical approach to the search incident to arrest exception, stating:

"[Petitioner's] argument contravenes our decisions holding that the legality of a search incident to arrest must be judged on the basis of categorical rules. In *Robinson,* for example, no one claimed that the object of the search, a package of cigarettes, presented any danger to the arresting officer or was at risk of being destroyed in the time that it would have taken to secure a search warrant. The Court nevertheless upheld the constitutionality of a warrantless search of the package, concluding that a categorical rule was needed to give police adequate guidance: 'A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search.' 414 U.S., at 235, 94 S. Ct. 467; *cf. Riley*, 523 U.S. at __, 134 S. Ct. at 2491-92 ('If police are to have workable rules, the balancing of the competing interests must in large part be done on a categorical basis— not in an ad hoc, case-by-case fashion by individual police officers' [brackets, ellipsis, and internal quotation marks omitted])." *Birchfield*, 136 S. Ct. at 2179-80.

Thus, the constitutional bounds of a search incident to arrest in this case are not limited by the subjective beliefs of the arresting officer or by our determination whether a reasonable person would think the circumstances could pose any danger to the officer, but by the area accessible to the person arrested.

"'[A] search incident to arrest may only include "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." [*Gant*, 556 U.S.], at 339, 129 S. Ct. 1710 (citation omitted). This limitation on the search-incident-to-arrest

exception to the warrant requirement 'ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy.' *Id.* Thus, '[w]here the item to be searched is not within reasonable reach of the person arrested, the rationale for application of this exception is absent.' *United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993). Therefore, '[t]o determine whether a warrantless search incident to an arrest exceeded constitutional bounds, a court must ask: was the area in question, at the time it was searched, conceivably accessible to the arrestee—assuming that he was neither an acrobat [nor] a Houdini?' *United States v. Lyons*, 706 F.2d 321, 330 (D.C. Cir. 1983) (internal quotation marks and citations omitted)." *United States v. Cancel*, __ F. Supp. 3d __, 2016 WL 929340, at *4 (S.D.N.Y. March 9, 2016).

The answer to that question here is unquestionably "yes."

We find the district court erred in concluding that the wallet was out of Wissing's control at the time of the search and in failing to apply a categorical approach. Because the wallet remained within Wissing's reach after he placed it on his dresser soon after his arrest, its search was within the scope of a lawful search incident to arrest under controlling Fourth Amendment precedent. Therefore, the evidence found in Wissing's wallet should not have been suppressed.

Reversed and remanded for further proceedings.

15